### George Brooks v. State.

No. 2072.   Decided November 27, 1912.

**1.—Theft from Person—Sufficiency of the Evidence.**

Where, upon trial of theft from the person, the evidence was sufficient to sustain the conviction, there was no error.

**2.—Same—Charge of Court—Recent Possession—Explanation.**

Where, upon trial of theft from the person, the court's charge on recent possession and explanation fully submitted defendant's side of the case according to the facts in the case, there was no error.

Appeal from the District Court of Anderson. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Rose,* for appellant.—On question of insufficiency of the evidence: Roberts v. State, 1 S. W. Rep., 452; Graves v. State, 8 S. W. Rep., 471; Johnson v. State, 52 Texas Crim. Rep., 510, 107 S. W. Rep., 845; Brooks v. State, 56 Texas Crim. Rep., 513, 120 S. W. Rep., 878.

On question of court's charge on explanation: Roberts v. State, 24 S. W. Rep., 895.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of theft from the person, his punishment being assessed at three years confinement in the penitentiary.

The main contention is that the evidence does not sustain the conviction. Briefly stated, the statement of facts discloses that the

alleged injured party Robinson had gone from his home in Houston County, fifteen miles distant, to the town of Palestine, and there became intoxicated. During the evening or rather at night while in this intoxicated condition he was in a saloon. There were negroes in there, and among them a negro who worked on Robinson's place, and who had accompanied him to Palestine. There was also another negro in there named Brooks, the appellant in this case. Robinson, following the usual custom of intoxicated men, was generously treating those who drink, among them appellant and one or more other negroes. Appellant bought a bottle of whisky and had offered to treat Robinson, in as much as the bar-keeper had refused to let appellant drink because he had reached the limit, whereupon appellant offered, perhaps at the request of Robinson, to open his bottle of whisky and give Robinson a drink of it. Appellant declined to do so in the saloon proper because it would interfere with the business of the saloon and invited Robinson into a rear room to take a drink. Robinson accompanied him. The bottle was opened, Robinson took a drink and let it drop on the floor, breaking it. Appellant insisted that Robinson should buy him another bottle, which Robinson agreed to do. He went to the bar and Robinson ordered the bar-keeper to let appellant have a bottle of whisky. There arose a discussion about the price of it, appellant claiming he had paid $1.25 for the broken bottle, and Robinson did not think he had paid but one dollar. While discussing the matter the negro friend of Robinson, whom he brought with him from his farm, reminded Robinson of the fact that it was about train time, and asked him to give him the money so he might purchase tickets. Robinson put his hand in his pocket to get the money and did get it, and gave it to his negro friend to purchase tickets. He then missed his watch, and stated that somebody had gotten his watch, and tried to ascertain what had become of it. His testimony indicates that the watch was taken before he and appellant returned from the rear room into the bar. After missing the watch he turned to Will Fisher, his negro friend he brought with him from the farm, and asked him if he had his watch, and he said, "No sir, I haven't got it," and he then turned to the crowd and said, "Have any of you all got my watch," and all of them said no. Appellant was in that crowd. This was immediately after returning into the bar from the rear room where he had taken a drink. Robinson went away to hunt an officer, and finally informed the officers that his watch had been taken. Appellant followed along after Robinson and when he reached the officers shortly after Robinson did, one of the officers asked him if he knew anything about the watch, and he replied that he did not. The officer then asked appellant if he got the watch, and he said no. He then asked him if he knew who did get it, and he said he did not, but he knew Robinson had the watch in the saloon, and about that time another negro came up and motioned to the officer, and he went to where he was, and he told the officer that he

believed George (appellant) got the watch; that he had gone back in the rear end of the saloon with Mr. Robinson. The officer then walked back and began questioning appellant and about that time Mr. Reagan walked up, but Robinson had then gone back to the saloon. The officers began searching the parties, and among others they searched appellant and found the watch on his person. Officer Dublin testified in this connection that "Mr. Reagan searched him on one side and I searched him on the other, and I run my hand in his pocket and pulled the watch out, and I asked him whose was it, and he said, 'That is it; I was just fixing to take it back to him;' and so I took him and locked him up and gave the watch to Mr. Robinson." The account given by appellant at the time as to his possession of the watch and why he took it, is thus reported in the statement of facts: "Yes sir, after I taken it out of his pocket he said that he was keeping it to make the fellow pay him for a quart of whisky." Appellant's theory of the matter, after stating that he and Robinson had been back in the saloon and had taken a drink out of his bottle of whisky, and broke it, and the trouble arising afterwards as to the value of the bottle of whisky, was, speaking of Robinson: "He asked me what kind was it, and I told him that it was Cascade and that it cost $1.25, and he said, 'Aw, away with Cascade,' just that way, and I said, 'You won't pay for it?' and he said, 'Aw, that is all right,' and I said, 'What time have you got?' and he pulled his watch out and said, 'It is a little after eight' or something like that, and I said, 'All right, let me see' and he handed me the watch and I said 'I will keep this until you replace my whisky; when you replace my whisky I will replace your watch' and he said, 'Give me that watch' and I said, 'No, I will replace your watch when you replace my whisky,' and he said, 'That watch cost $25,' and I said, 'That isn't anything if it cost $125; my whisky cost $1.25, and if you will replace it I will replace your watch, and if not, I will know the reason why,' and that was all he said to me right there," He then narrates a conversation that occurred between himself and Will Fisher, the other negro mentioned as being Robinson's hired man. Appellant's theory was introduced by his own testimony and his statement to the officers at the time they took the watch from him, and the two accounts are substantially the same.

We are of opinion, so far as the facts are concerned, that the jury was authorized to take the view of it they did and find appellant guilty of theft from the person. Robinson says that appellant got the watch without his knowledge or consent; he was drinking, and indicates appellant got the watch in the rear room while they were taking a drink of whisky. Appellant's theory of it was, he got it as he stated by inducing Robinson to hand it to him, and then holding it in order to make Robinson replace the broken bottle of whisky. If Robinson and the officers are correct in their statements, then appellant took the watch from Robinson privately and surreptitiously

without his knowledge, and when the officers asked him about it, denied having it several times, although immediately afterwards it was found upon his person. He then said he took it in order to force Robinson to pay for the broken bottle of whisky. Now, these two theories were submitted to the jury by the court in his charge. The jury was authorized to find the evidence for the State correct and truthful.

There is another contention to the effect that the court failed to charge appellant's theroy of the case as made by his explanation. The court thus charged the jury in this respect: "If defendant took the watch from the hand of said Robinson with the knowledge of said Robinson, or if defendant took it merely for the purpose of holding till he was paid for the quart of whisky that had been broken, or if you have a reasonable doubt on either of these issues you will return a verdict of not guilty." We are of opinion this does submit appellant's side of the case fully and in accord with his testimony and his explanation both. We have commended heretofore this manner of charging a jury with reference to explanation of stolen property instead of giving the lengthier charge with reference to reasonable doubt and the consideration of that and all other phases, etc. The charge given by the trial judge herein is simple, straight, unequivocal, and intelligible. We do not believe any jury could possibly misunderstand this charge, and if they believed the testimony and the theory of appellant, that he got the watch from Robinson as indicated in his testimony and in his explanation, they would have acquitted under this charge. They were plainly told that if he got the watch from Robinson with his knowledge or if he took it merely for the purpose of holding it until he was paid for the quart of whisky that had been broken, he would not be guilty under the charge of stealing from the person of Robinson, and that the jury should acquit him.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*